APPEALS OF THE MALTINE COMPANY.

Docket Nos. 2805, 3967.   Promulgated February 18, 1927.

Transaction involved herein *held* to be a purchase by the petitioner of the assets of its predecessor for its capital stock.

*Wm. R. Conklin, Esq.*, and *Louis O. Van Doren, Esq.*, for the petitioner.
*Henry Ravenel, Esq.*, for the Commissioner.

1919 of $9,517.98, $9,630, and $7,217.34, respectively. It alleges that the Commissioner erred in the determination of its invested capital.

### FINDINGS OF FACT.

The petitioner is a New York Corporation, organized in January, 1898, with an authorized capital stock of $1,000,000, divided into 10,000 shares of the par value of $100 each, and having its principal office in Brooklyn. The only statement in the certificate of incorporation with reference to the purpose and powers of the corporation is as follows:

The purposes for which it is to be formed are, the making and selling medicinal and food products.

For many years prior to 1898, The Maltine Manufacturing Co., a New York corporation, was engaged in manufacturing and marketing a medicinal preparation known as Maltine. In 1898 its capital stock was $100,000, all of which was held by four stockholders as follows:

|  | Shares. |
|---|---|
| Timothy L. Woodruff | 310 |
| Lucius H. Biglow | 385 |
| Rodney A. Ward | 230 |
| Phineas C. Lounsbury | 75 |

For many years prior to 1898 the earnings of the company had exceeded $100,000 annually and it had paid annual dividends of 100 percentum of the par value of its stock. The value of the stock in January, 1898, was in excess of $1,000,000, represented largely by intangible assets.

At a meeting of the board of directors of The Maltine Manufacturing Co. held January 8, 1898, the following resolution was adopted:

WHEREAS, on the 8th day of January, 1898, the stockholders of this Company by unanimous vote made the following resolution:

"WHEREAS, The Maltine Company, a corporation duly organized under the laws of the State of New York, has proposed to purchase and take over all of the property, both real and personal, assets, business and good-will of this Company, and in consideration therefor to issue and deliver to the stockholders of this company its total capital stock, amounting to One Million Dollars; and

"WHEREAS, it is deemed advisable to accept said proposition:

"THEREFORE BE IT RESOLVED, That the Directors of this Company be and they hereby are authorized and directed to make the following agreement:

\*        \*        \*        \*        \*        \*        \*

"AND BE IT FURTHER RESOLVED, That said Directors be and they hereby are authorized and directed to do and perform all necessary acts and to make, execute and deliver all necessary papers to carry said agreement into full force and effect."

THEREFORE BE IT RESOLVED, That the President and Secretary of this Company be and they hereby are authorized and directed to make, execute and deliver the aforementioned agreement and to do and perform all necessary acts and to make, execute and deliver the necessary papers to carry the same into full force and effect.

The contract recited in this resolution was thereafter executed by The Maltine Manufacturing Co. and The Maltine Co. In so far as material it reads as follows:

THIS AGREEMENT, made the 8th day of January, 1898, between The Maltine Manufacturing Company, party of the first part, and The Maltine Company, party of the second part

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

WHEREAS, the party of the second part is desirous of acquiring all of the property, both real and personal, and the assets, business and good-will of the party of the first part;

Now, THEREFORE, THIS INDENTURE WITNESSETH: That it is mutually agreed by and between the said party of the first part and the party of the second part, as follows:

1. The said party of the first part doth agree to convey, sell, assign, transfer, and set over unto the party of the second part all of the property of the party of the first part, both real and personal, wheresoever the same may be situate, whether held by or in the name of the said party of the first part, or in trust therefor, and the business and good-will thereof, including all and singular the lands, tenements, hereditaments and appurtenances, goods, chattels, stocks, promissory notes, debts, choses in action, evidences of title, claims, demands and effects of every description belonging to said party of the first part, wheresoever the same may be situate.

2. In consideration thereof, the party of the second part agrees to issue all of its capital stock, amounting to one million dollars ($1,000,000) to the stockholders of the party of the first part, according to their respective interests in, or holdings of, the capital stock of the party of the first part; that is to say, to Timothy L. Woodruff, thirty-one hundred shares; to Lucius H. Biglow, thirty-eight hundred and fifty shares; to Rodney A. Ward, twenty-three hundred shares, and to Phineas C. Lounsbury, seven hundred and fifty shares; said stock to be issued and delivered fully paid and non-assessable, to the said stockholders of the party of the first part.

3. The party of the second part further agrees to assume all of the debts, liabilities and obligations of the party of the first part.

4. It is mutually agreed that the aforementioned delivery of the property, etc., of the party of the first part to the party of the second part, and the issue and delivery of the capital stock of the party of the second part to the stockholders of the party of the first part, shall take place on the 8th day of January, 1898 \* \* \*.

On January 8, 1898, the petitioner issued all of its stock to the subscribers named in the certificate of incorporation, as follows:

|  | Shares. |
|---|---|
| Timothy L. Woodruff | 3,334 |
| Lucius H. Biglow | 3,333 |
| Rodney A. Ward | 3,333 |

On the same date, Timothy L. Woodruff and Rodney A. Ward surrendered the original certificates issued to them, respectively, and other certificates were issued by the petitioner as follows:

|  | Shares. |
|---|---|
| Timothy L. Woodruff | 3, 100 |
| Lucius H. Biglow | 517 |
| Rodney A. Ward | 2, 300 |
| Phineas C. Lounsbury | 750 |

The petitioner's stock was held after this transfer on January 8, 1898, as follows:

|  | Shares. |
|---|---|
| Timothy L. Woodruff | 3, 100 |
| Lucius H. Biglow | 3, 850 |
| Rodney A. Ward | 2, 300 |
| Phineas C. Lounsbury | 750 |

After a search of something over a year, the certificates of stock in The Maltine Manufacturing Co. outstanding as of January 8, 1898, were found in 1925 in the safe of the petitioner endorsed in blank and marked " cancelled."

On January 8, 1898, a deed of its real estate to the petitioner was executed and acknowledged by The Maltine Manufacturing Co. This deed was recorded May 8, 1900.

The petitioner took possession of the factory, equipment, and other assets of The Maltine Manufacturing Co. Thereafter, the products formerly made by The Maltine Manufacturing Co. and other new products were manufactured and sold by the petitioner under the label of The Maltine Manufacturing Co.

No steps were taken to dissolve The Maltine Manufacturing Co. after the transfer of January 8, 1898.

The petitioner in its income and profits-tax returns for 1917 and 1918, 1919, 1920, and 1921, made the following statement with reference to its invested capital:

This Company issued $1,000,000 capital stock for $1,000,000 in trademarks and $134,926.34 net of tangible property.

The Commissioner determined that the petitioner acquired the assets, tangible and intangible, of The Maltine Manufacturing Co. in exchange for its stock and permitted the value of the good will to be included in invested capital subject to the limitations upon intangible assets.

In computing invested capital for 1918 the Commissioner deducted from earned surplus existing at the beginning of the year the amount of $21,000.53, representing income and profits taxes for 1917. The amount so deducted was computed by prorating the entire tax for 1917 from the date when it became due and payable. In a similar manner $48,651.63, a prorated portion of the income and profits tax for 1918, was deducted in computing invested capital for 1919.

## OPINION.

PHILLIPS: It is the contention of the petitioner that it issued its capital stock for the capital stock of its predecessor, The Maltine Manufacturing Co., that such stock had a value of over one million dollars, and that under the decision of this Board in *Appeal of Regal Shoe Co.*, 1 B. T. A. 896, it is entitled to include this full amount in its invested capital. The Commissioner contends that the petitioner purchased the assets of its predecessor, which were largely intangible and can be included in invested capital only in a limited amount.

The contract entered into between the two companies plainly contemplates a purchase by the petitioner of the assets of its predecessor. There is nothing in the evidence which would lead us to believe that this contract was not carried out in accordance with its terms. Although the petitioner insists that the stockholders of the predecessor corporation surrendered their stock to the petitioner and in exchange received its stock, the only evidence which would lend any support to this theory is that the certificates of the predecessor company were, in 1925, found in the safe of the petitioner marked "cancelled." But even here we find that the only two endorsements which bear any date purport to have been executed January 31, 1898, some three weeks after the date when certificates of the petitioner were issued.

Petitioner lays stress upon the failure to find any bill of sale of the personal property of its predecessor. There is no question, however, that the petitioner went into possession and control of these assets, and under such circumstances a bill of sale is unnecessary. A deed of the real estate of the predecessor corporation was executed and acknowledged by its officers on the same date that the certificates of stock were issued to the stockholders of the predecessor corporation and, although this deed was not recorded for some two years, this fact can not lend support to the petitioner's theory that the stock of the predecessor corporation was first acquired by the petitioner and the assets transferred thereafter.

The entire transaction appears to have been carried through on one date, January 8, 1898. On that date the stockholders and directors of the predecessor corporation each held a meeting and authorized the sale of the assets in exchange for the total capital stock of the petitioner to be issued to the stockholders of such predecessor corporation, the agreement between the parties was executed and acknowledged, the deed was executed and acknowledged, and the certificates of stock of the petitioner were executed and delivered. There is nothing in the record which would lead us to believe that on this same date and before the delivery of the stock certificates the parties changed the transaction into one for the purchase of the stock of the predecessor corporation, rather than its

assets. Such evidence as we have leads to a contrary conclusion and the determination ol the Commissioner must be approved.

The adjustment of invested capital by prorating the amount of the income and profits taxes for prior years is in accordance with the provisions of the Revenue Act of 1926. *Russel Wheel & Foundry Co.,* 3 B. T. A. 1168.

> *The deficiencies are redetermined to be the amounts determined by the Commissioner. Decisions will be entered accordingly.*